# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JEFFERSON DEWAYNE JOHNS**

**CIVIL ACTION**

**VERSUS**

**NO. 16-162-RLB[1]**

**CAROLYN W. COLVIN, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**

---

## RULING AND ORDER DISMISSING SOCIAL SECURITY APPEAL

---

Jefferson Dewayne Johns ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on May 23, 2011 alleging that he became disabled on May 1, 2008 because of a disabling condition, namely Bipolar Disorder, Attention Deficit Disorder ("ADD"), and severe

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

anxiety (Tr. 244). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 24-39) before issuing an unfavorable decision on August 28, 2012. (Tr. 78-93). Plaintiff's first request for review of the ALJ's decision was granted by the Appeals Council on October 17, 2013. (Tr. 94-97). On remand to the ALJ, a second administrative hearing was held (Tr. 40-63) before issuing an unfavorable decision on June 30, 2014. (Tr. 6-23). The ALJ's second decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the

evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant

is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.  Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2008.

2.  Plaintiff had not engaged in substantial gainful activity since May 1, 2008.

3.  Plaintiff suffered from the following severe impairments: bipolar disorder; anxiety; attention deficit hyperactivity disorder and attention deficit disorder.

4.  Plaintiff did not meet or medically equal any listed impairment.

5.  Plaintiff retained the residual functional capacity to perform medium work limited to simple, routine tasks and only occasional contact with the general public and co-workers.

6.  Plaintiff was unable to perform any past relevant work.

7.  Plaintiff was born on June 30, 1986 and was 21 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date.

8.  Plaintiff had a limited education and was able to communicate in English.

9.      Transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled.

10.     There are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

(Tr. 11-18).

## IV.    DISCUSSION

Plaintiff raises the following five assignments of error: (1) the ALJ erred in finding Plaintiff did not meet or medically equal a listed impairment; (2) the ALJ failed to properly consider the opinions and Medical Source Statement of Dr. Richard Rathbone; (3) the ALJ's decision is not supported by substantial evidence;[2] (4) the ALJ failed to include all of Plaintiff's limitations in his RFC analysis; and (5) the hypotheticals posed to the vocational expert (VE) were insufficient.

### A.      Substantial Evidence Supports the ALJ's finding that Plaintiff Does Not Meet or Medically Equal Listing 12.04 or 12.06

Plaintiff has the burden of establishing that he meets a Listing. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. § 404.1520(d).  The criteria for the Listings are "demanding and stringent." *Heck v. Colvin*, F.App'x 411, 415 (5th Cir. 2017) (citing *Falco v. Shalala*, 27 F. 3d 160, 162 (5th Cir. 1994).  "Plaintiff's subjective complaints, without objective medical evidence, are insufficient to establish disability." *Id*. (citing 20 C.F.R. §§ 404.1508, 404.1528, 404.1529).  "For a claimant to show that his impairment matches a listing, it must meet

---

[2] Although Plaintiff lists as an Assignment of Error that the ALJ's decision is not supported by substantial evidence (R. Doc. 12 at 4), Plaintiff does not provide the Court with any supporting argument as to this assignment of error. Accordingly, the Court deems this argument abandoned to the extent it is not encapsulated within the discussion and analysis of the remaining arguments.  *See, e.g. Cushenberry v. U.S. Auto. Ass'n*, 2012 WL 2127497, at *2 (M.D. La. June 12, 2012) (citing *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006)) ("Inadequately briefed issues are deemed abandoned."); *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) ("To the extent that Perez attempted to advance that argument, it is waived due to inadequate briefing.").

all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ specifically considered whether the Plaintiff satisfied the criteria under Listings §§ 12.04 or 12.06. (Tr. 12-13).  Listing § 12.04 details the criteria for disabling "Depressive, bipolar and related disorders." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.04.  Listing § 12.06 details the criteria for disabling "Anxiety and obsessive-compulsive disorders." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.06.  In order to meet or medically equal a § 12.04 or § 12.06 Listing, the Plaintiff must satisfy the requirements of both paragraphs A and B, or both paragraphs A and C of each respective Listing. *See.* 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(A)(2). The Paragraph C criteria are only addressed if paragraph B criteria are not satisfied. *See Sims v. Astrue*, 2012 WL 4320817, at *5 (N.D. Miss. Aug. 20, 2012).

The Paragraph B criteria of both 12.04 and 12.06 require extreme limitation of one, or marked limitation of two, of the four listed areas of mental functioning, *i.e.*, the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.04(B). Alternatively, the Paragraph C criteria establishes that a mental disorder is "serious and persistent" if there is evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2) marginal adjustment. 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.04(C).

Plaintiff's argument as to the Listings is limited to Paragraph B, as Plaintiff advances no argument that he has met the Paragraph C criteria.  Plaintiff suggests that the Paragraph B criteria are met as to both 12.04 and 12.06 because the records reflect that Plaintiff has marked

difficulties in maintaining social functioning (subsection (B)(2)), as well as marked difficulties in maintaining concentration, persistence or pace (subsection (B)(3)). (R. Doc. 12 at 6).  The Commissioner counters that, although the diagnosis requirement of Paragraph A has been met, Plaintiff has not and cannot meet his burden as to the Paragraph B criteria. (R. Doc. 14 at 12).

The ALJ concluded that Plaintiff had (1) moderate restriction in activities of daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties with regard to concentration, persistence, or pace; and (4) no episodes of decompensation. (Tr. 12-13).  In so finding, the ALJ specifically noted that Dr. Van Hook found plaintiff to be "well nourished, adequate in appearance and had adequate hygiene at the time of his interview" (Tr. 12); Plaintiff takes out the trash but does very little household chores (Tr. 12); Plaintiff testified that he gets nervous around others and is unable to work around people, but had a girlfriend and several children (Tr. 13); Dr. Van Hook noted that Plaintiff's "ability to respond appropriately to supervision and interact appropriately with others is questionable at this point due to his continued trouble regulating his mood and anger," but "showed an adequate level of social judgment and understanding of the general principles related to social situations" (Tr. 13); Plaintiff's "memory was intact for meals, sequences and activities" and Dr. Van Hook reported that Plaintiff "showed no difficulty clarifying information, but trouble with focus during the interview" (Tr. 13).

Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (Tr. 13).  Plaintiff suggest that portions of his own testimony, his own reports to providers, and certain language in Dr. Van Hook's findings amount to "marked" limitations.  The Court does not agree.  Further, the only place in the record where

marked or extreme limitations are found is the Medical Source Statement of Dr. Richard

Rathbone (Tr. 413-417), but the ALJ was within his discretion to afford that opinion little weight

for the reasons set forth in more detail below.

Dr. Van Hook examined Plaintiff on August 8, 2011, noting that he reviewed the January

12, 2009 psychiatric evaluation in connection with Plaintiff's disability claim. Dr. Van Hook

reported that Plaintiff was "well nourished, adequate in appearance, and had adequate hygiene at

the time of the interview," and that Plaintiff was "like [sic] and cooperative throughout." (Tr.

326). Limiting the review of the exam to Dr. Van Hook's opinions, *i.e.*, excluding his

recordation of Plaintiff's statements and complaints, Dr. Van Hook states that Plaintiff

"presented during this examination in an acceptable fashion," "showed no debasement or

defensiveness," and was adequate in motivation. (Tr. 327). He further found that Plaintiff's

score of a seven on the MDQ indicated "presence of serious problems but no known family

history of bipolar spectrum disorder." (Tr. 327).

In the memory section of his opinion, Dr. Van Hook states that Plaintiff "showed

inattention," his "concentration was marginal," and his "basic math skills were not adequate for

simple division," but also noted that Plaintiff's "recent memory was intact for meals, sequences,

and activities," his "auditory sequential memory was intact and he was able to recall serial digits

both forward and backward," Plaintiff "showed no difficulty clarifying information," his long-

term memory "was intact for specific events and history," his "persistence was adequate," he was

shown "to possess an adequate level of social judgment and adaptive skills," and "was able to

interact on a 1:1 basis" despite rating his anxiety a ten. (Tr. 327).

Dr. Van Hook's Psychological Source Statement ("PSS") concludes that Plaintiff's

ability to understand, remember and carry out instructions was "intact" at the time of the exam

(Tr. 328), which does not equate to the "marked" limitation required by Paragraph B.  The PSS further notes that Plaintiff's "ability to maintain attention/concentration for performance of simple repetitive tasks was *variable* and he showed period of inattention," which also does not equate to a finding of a "marked" limitation. (Tr. 328) (emphasis added).  Dr. Van Hook's PSS also found that Plaintiff's ability to maintain a normal pace was unimpaired physically.  (Tr. 328).  It was further concluded in Dr. Van Hook's PSS that Plaintiff "showed an adequate level of social judgment and understanding of the general principles related to social situations," and that Plaintiff's "ability to show adequate stress tolerance is believed to be *moderately* impaired." (Tr. 328).  None of these findings satisfy the single "extreme" limitation requirement, and even were the "variable" ability to maintain concentration, persistence or pace be found to a "marked" limitation, the regulations require two "marked" limitations.

In *Heck v. Colvin*, 674 F.App'x 411, 414-415 (5th Cir. 2017), the Fifth Circuit addressed the question of whether a claimant had met her burden of establishing the step three listing requirements.  There, the Court found that the claimant had not met her burden because she "fails to explain how her symptoms align with the criteria of the Appendix medical listing." *Heck*, 674 F.App'x at 415.  The Fifth Circuit supported this holding by noting that the claimant had "cite[d] testimony about her medical history at length, but [did] not show how this medical evidence demonstrates that she meets each of the required criteria under the Appendix medical listing." *Heck*, 674 F.App'x at 415.  The same infirmities exist here.  Plaintiff cites his own testimony, Dr. Van Hook's recordations of Plaintiff's complaints, and Dr. Van Hook's findings in support of his argument, but fails to establish that any of that information rises to the level of the one "extreme" or two "marked" limitations required by the regulation.

Other objective medical evidence in the record supports the findings of Dr. Van Hook, and the lack of any "marked" limitations as to the Paragraph B criteria, such that substantial evidence exists to support the ALJ's decision. Most recently, Plaintiff was assessed a functional status impairment rating of "mild." (Tr. 423). In the February 25, 2011 records from the Gonzales Mental Health Center ("GMHC"), it is noted that Plaintiff reported "feeling considerably better," "anxiety episodes have been reduced," and his "ability to focus is improved." (Tr. 309). During a December 10, 2010 visit to GMHC, Plaintiff "reports not being symptomatic at this time," and "there has been a decrease in mood swings, increase in concentration, will not need hospitalization, feeling of improvement." (Tr. 365). Plaintiff also reported not being symptomatic to GMHC on August 11, 2011 (Tr. 361-62), May 20, 2011 (Tr. 362), July 9, 2010 (Tr. 367), June 3, 2010 (Tr. 368), May 6, 2010 (Tr. 368-69), March 9, 2010 (Tr. 370-71), February 9, 2010 (Tr. 371), November 19, 2009 (Tr. 374), October 15, 2009 (Tr. 374-75), September 16, 2009 (Tr. 376), and August 17, 2009 (Tr. 377-78).

On numerous occasions, Plaintiff filled out a form indicating he was "doing well currently and just need[ed] to pick up [his] medication today." (Tr. 391, 392, 393, 394, 395). On April 9, 2010, GMHC memorialized that Plaintiff reported "doing ok with medications," "no hopelessness or helplessness," "no crying spells," "no evidence of psychosis or mania," "no panic attacks," and reported "compliance with medications." (Tr. 315). Similar findings were made January 15, 2010. (Tr. 318). Overall, the GMHC records do little beyond recording Plaintiff's complaints and symptoms, diagnoses, and treatment plans, which are consistently limited to therapy and medication management. The GMHC records do not indicate any rating as to the severity of Plaintiff's limitations and, accordingly, provide no basis to reverse the decision of the ALJ.

The Court is aware that Dr. Rathbone's April 3, 2014 Medical Source Statement ("MSS") is entirely "marked" and "extreme," but for the reasons discussed below, there is substantial conflicting evidence in the record such that the ALJ was within his discretion to accord Dr. Rathbone's opinion little weight.  Plaintiff does not cite to Dr. Rathbone's findings in support of his argument regarding step 3. None of the written records completed at the time of Plaintiff's visits with Dr. Rathbone support these findings.  While Dr. Rathbone consistently notes Plaintiff's diagnoses of Bipolar Disorder and Anxiety, his records show little more than maintenance of prescription medication.  Where Dr. Rathbone's records reflect any analysis of the severity of Plaintiff's impairments, none reflect an extreme or marked rating, and Dr. Rathbone consistently notes no changes in medical history. (Tr. 504, 506, 507, 508, 510, 512, 513, 514, and 515).  On January 2, 2013, Dr. Rathbone notes chronic, continuous, moderate distress for 3 or more years that is worsened by stress and better with medication. (Tr. 492). Then, on April 11, 2013, Dr. Rathbone notes *improved*, chronic, continuous distress for 3 or more years that is worsened by stress and better with medication. (Tr. 494).  Those two references compose the entirety of any indication of severity in the records of Dr. Rathbone, which fails to substantiate the "marked" and "extreme" limitations provided in his MSS. *See, e.g. Long v. Astrue*, 2008 WL 618976 (E.D. Cal. March 3, 2008) (finding the ALJ within his discretion in declining to adopt the opinion of a treating physician where "[a]lthough there may have been some evidence that Plaintiff had an impairment that could produce some limitations, the ALJ considered appropriate factors, properly weighted the opinion of Dr. Smith, and concluded that there was an absence of objective medical evidence supporting limitations as extreme as those imposed by Dr. Smith").

In short, nowhere in the records of GMHC or Dr. Van Hook does a provider report an extreme or marked limitation as a result of Plaintiff's Bipolar Disorder or Anxiety Disorder. Indeed, the majority of the objective medical records reflect an absence of marked or extreme classifications. Thus, substantial evidence supports the ALJ's conclusion at step 3. While Dr. Rathbone's opinion does report marked and extreme limitations, that opinion is an outlier inconsistent with the remainder of the administrative record and, for the additional reasons below, the ALJ was within his discretion to afford little weight to his opinion. There is a notable absence of credible evidence finding either extreme or marked limitations in Plaintiff's ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, or adapt and manage himself. Further, there is substantial evidence in the administrative record that Plaintiff's limitations are not extreme or marked such that the ALJ's decision will not be overturned on that ground.

**B.     Weight given to Dr. Rathbone's Opinion in RFC Determination**

Plaintiff argues that the ALJ failed to accord the proper weight to the records and Medical Source Statement of Dr. Richard Rathbone in his RFC analysis because he is a treating physician and competent to render a medical source statement as Plaintiff's primary care physician. (R. Doc. 12 at 8). The Commissioner responds that the ALJ properly considered Dr. Rathbone's MSS and treatment records as two of several types of evidence to be considered in the RFC analysis, and applied the appropriate factors when determining the weight to be given to Dr. Rathbone's opinion. (R. Doc. 14 at 7-10).

The ALJ was within his discretion in discounting the weight to be given to Dr. Rathbone's MSS. The ALJ reviewed and summarized the MSS of Dr. Rathbone, as well as Dr. Rathbone's longitudinal treating history with Plaintiff, but discounted its significance because

Dr. Rathbone's opinion was inconsistent with the records from the mental health center, and not supported by the medical records of Dr. Rathbone. (Tr. 15).

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[3] The ALJ did not provide such a "detailed analysis."

The ALJ, however, is not required to consider each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 F.App'x 534,

---

[3] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). Thus, the ALJ's decision to reject a treating physician's opinion must be supported by substantial, contradictory, first-hand evidence from another physician. If the decision is so supported, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F.App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F.App'x at 534). An ALJ is free to discredit the opinion of a treating physician when it is contradicted by another physician — examining or not. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion). "[A] specialist's opinion is afforded greater weight than a generalist's." *Beasley v. Barnhart*, 191 F.App'x 331, 334 (5th Cir. 2006) (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Lastly, "a treating physician's opinion may be given little or no weight 'when the evidence supports a contrary conclusion.'" *Beasley*, 191 F.App'x at 334 (citing *Newton*, 209 F.3d at 455).

Here, the ALJ rejected the findings in Dr. Rathbone's MSS because those findings were inconsistent with the other first-hand medical evidence from the mental health center, and Dr. Rathbone's medical records did not support his own Medical Source Statement. (R. Doc. 14 at 9). Substantial evidence supports the ALJ's conclusion.

Dr. Rathbone's MSS concludes that Plaintiff has marked limitation in his ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions, interact appropriately with supervisors and co-workers, and respond appropriately to usual work situations and to changes in a routing work setting. (Tr. 413-414). The MSS notes extreme limitation in Plaintiff's ability to understand, remember, and carry out complex

instructions, make judgments on complex work-related decisions, and interact appropriately with the public. (Tr. 413-414). Dr. Rathbone writes, in further support of his MSS, that Plaintiff's "anxiety is to a severe level which has resulted in associated agoraphobia making it extremely difficult for him to leave any comfortable surroundings." (Tr. 416). Dr. Rathbone also states that Plaintiff's "difficulty interacting with people who are unknown to him" is physically manifested by "tachycardia, diaphoresis and agitation." (Tr. 416). Dr. Rathbone concludes that Plaintiff "would have extreme difficulty interacting with the public, co-workers or supervisors; and generally any workplace environment." (Tr. 416).

The conclusions made in the MSS, however, are not consistent with Dr. Rathbone's medical records or with the extensive records from the mental health center. Dr. Rathbone fairly consistently notes ADD/ADHD, Anxiety, and Bipolar as the diagnoses. (Tr. 493, 494, 495, 496, 508, 509, 512, 513, 515). At the same time, while Dr. Rathbone's MSS suggests that Plaintiff's symptoms have progressed or "increased in severity," his medical records consistently report no changes in medical history. (Tr. 504, 506, 507, 508, 510, 512, 513, 514, and 515). On several occasions, Dr. Rathbone simply saw Plaintiff only for a refill of Adderall (Tr. 496, 505, 507, 510, 511, 512, 513, 514, and 515). On at least one occasion, Dr. Rathbone noted that Plaintiff was "doing well." (Tr. 506). On January 2, 2013, Dr. Rathbone notes chronic, continuous, moderate distress for 3 or more years that is worsened by stress and better with medication. (Tr. 492). Then, on April 11, 2013, Dr. Rathbone notes Plaintiff's chronic, continuous distress for 3 or more years was improved. (Tr. 494). On July 9, 2013, Dr. Rathbone notes no change in medical history and that the Plaintiff was stable with no exacerbation of anxiety. (Tr. 493). The medical records of Dr. Rathbone do not support the marked and extreme limitations Dr. Rathbone assigned in his MSS.

15

Dr. Rathbone's medical records are, however, consistent with the records of Gonzales Mental Health Center as well as Dr. Van Hook's assessment. Though Dr. Van Hook noted that Plaintiff reported that he "can't be in public," and when he is, "he is troubled with excessive sweating and 'freezes up'" (Tr. 326), he further notes that Plaintiff has a girlfriend, along with one child and another on the way (Tr. 326). Dr. Van Hook observed that Plaintiff was "well nourished, adequate in appearance, and had adequate hygiene," he "presented in an acceptable fashion," "appeared to be a reliable historian," and "was cooperative," not showing any "debasement or defensiveness," and his "motivation appeared adequate." (Tr. 327). Dr. Van Hook further reports that Plaintiff "did not appear to be in acute distress but he complained of anxiety." (Tr. 327). There is no evidence in Dr. Van Hook's report consistent with Dr. Rathbone's numerous "marked" and "extreme" limitations. To the contrary, Dr. Van Hook concludes that Plaintiff's "ability to understand, remember and carry out instructions was intact during this examination," his "ability to maintain attention/concentration for performance of simple repetitive tasks was variable," and he "showed an adequate level of social judgment and understanding of the general principles related to social situations." (Tr. 328).

Dr. Rathbone's medical records are also generally consistent with the unremarkable assessments repeatedly appearing in the GMHC records. On a form dated July 18, 2013, the provider had the option to select ratings of minimal, mild, moderate, serious, or extreme for her Functional Status Impairment Rating. Based on her visit with Plaintiff, she found him to have only "mild" functional status impairment. (Tr. 423). In the February 25, 2011 records from GMHC, it is noted by the physician provider that Plaintiff reported "feeling considerably better," "anxiety episodes have been reduced," and his "ability to focus is improved." (Tr. 309). During a December 10, 2010 visit to GMHC, Plaintiff "reports not being symptomatic at this time," and

"there has been a decrease in mood swings, increase in concentration, will not need hospitalization, feeling of improvement." (Tr. 310).  Plaintiff also reported not being symptomatic to GMHC on many occasions. (Tr. 361, 362, 365, 367, 312, 313, 314, 316, 316, 319, 320, 320, 323).  Plaintiff repeatedly filled out a form indicating he was "doing well currently and just need[ed] to pick up [his] medication today." (Tr. 391, 392, 393, 394, 395). On April 9, 2010, GMHC memorialized that Plaintiff reported "doing ok with medications," "no hopelessness or helplessness," "no crying spells," "no evidence of psychosis or mania," "no panic attacks," and reported "compliance with medications." (Tr. 315).  Similar findings were made January 15, 2010. (Tr. 318).

Where a treating physician's medical source statement is unsupported by his underlying medical records, and inconsistent with numerous other objective medical records—including records from specialists—such as is the case here, there is substantial evidence for the ALJ to discount the weight accorded to that Medical Source Statement, and the ALJ's decision will not be reversed on this ground.

### C.    Inclusion of Plaintiff's Limitations in RFC Analysis

Plaintiff's third argument is that the ALJ failed to include all of Plaintiff's limitations in his assessment of Plaintiff's RFC. (R. Doc. 12 at 9-11).  In support of his argument, Plaintiff relies primarily on Dr. Rathbone's MSS, wherein Dr. Rathbone determined that Plaintiff had marked limitation in his ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions, interact appropriately with supervisors and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting (Tr. 413-414), and extreme limitation in Plaintiff's ability to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, and interact

17

appropriately with the public (Tr. 413-414). Plaintiff also makes brief reference to Dr. Van

Hook's finding that Plaintiff's "ability to respond appropriately to supervision and interact

appropriately with others is questionable" (R. Doc. 12 at 11), and his own reports to GMHC that

he feels "irritable constantly" and "easily loses [his] temper and states that he often feels bad

after blowing up." (R. Doc. 12 at 11). The Commissioner argues that the ALJ "properly based

Plaintiff's RFC on *all* of the relevant evidence." (R. Doc. 14 at 4) (emphasis in original).

     The ALJ concluded that Plaintiff retained the residual functional capacity to perform

medium work limited to simple, routine tasks, and only occasional contact with the general

public and co-workers. (Tr. 13). In support of this finding, the ALJ noted that Plaintiff "has a

history of multiple complaints with objective findings consistent with some abnormalities, but

short of what would be expected in an individual who is completely disabled." (Tr. 17). The

ALJ further stated that "the claimant's mental impairments, considered singly and in

combination, do not significantly limit the claimant's ability to perform basic work activities."

(Tr. 17). In drawing this conclusion, the ALJ reviewed, considered, and discussed the records

from GMHC, Dr. Van Hook's opinion, Dr. Rathbone's MSS and medical records, and the

Plaintiff's testimony.

     "In making an RFC determination, the ALJ must consider all symptoms to the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence and must consider limitations and restrictions imposed by all of an

individual's impairments, even impairments that are not severe." *Barrett v. Colvin*, 2016 WL

3924412, at *4 (N.D. Tex. June 7, 2016) (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p,

1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2,

1996)). The ALJ is not, however, required to incorporate limitations not found to be supported

18

in the record. *Barrett v. Colvin*, 2016 WL 3924412 at *4 (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).

The ALJ, in performing his RFC analysis and determination, considered the following: (1) records from GMHC between January 12, 2009 and September 12, 2013 (Tr. 14; Tr. 298-324, 353-412, 418-475), particularly noting several instances in which Plaintiff reported not being symptomatic along with other iterations of improvement; (2) the opinion of Dr. Van Hook from an August 8, 2011 consultative examination (Tr. 14; Tr. 325-328); (3) medical records and the MSS of Dr. Richard Rathbone (Tr. 15; Tr. 413-417, 489-525), which were noted to be inconsistent with each other insofar as the Plaintiff's limitations were concerned; and (4) the claimant's testimony at the hearing.

The Court has already found, *supra*, that Dr. Rathbone's MSS is inconsistent with the objective medical records as a whole, as well as not supported by Dr. Rathbone's own medical records. For the same reasons stated in that analysis, Plaintiff's argument that the ALJ should have considered the marked and extreme limitations assigned by Dr. Rathbone is also without merit. Dr. Rathbone's MSS, including the limitations cited therein, is not supported by the record.

The only alleged limitation remaining in Plaintiff's argument is Dr. Van Hook's statement that Plaintiff's "ability to respond appropriately to supervision and interact appropriately with others is questionable at this point due to his continued trouble regulating his mood and anger" (R. Doc. 12 at 11; Tr. 328), which Plaintiff suggests is corroborated by records from GMHC that record Plaintiff's own reports, stating, "Pt. c/o feeling irritable constantly. Easily loses temper and states that he often feels bad after blowing up." (R. Doc. 12 at 11; Tr. 359). In other words, Plaintiff does not challenge the ALJ's exertional finding limiting Plaintiff

19

to medium work, but only his non-exertional finding limiting Plaintiff to simple, routine tasks, and only occasional contact with the general public and co-workers.

The ALJ cites the exact language from Dr. Van Hook's opinion that Plaintiff argues supports his position that the ALJ did not properly consider Plaintiff's limitations in his RFC analysis. (Tr. 14-15) ("His ability to respond appropriately to supervision and interact appropriately with others is questionable at this point in time due to his continued trouble regulating his mood and anger.").  Plaintiff is, therefore, incorrect insofar as he argues that the ALJ failed to consider this statement, and the question becomes whether substantial evidence supports the ALJ's RFC finding in light of Dr. Van Hook's statement and Plaintiff's corroborating report in the GMHC records.

The ALJ found that Plaintiff was not completely disabled, stating that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 16). Substantial evidence in the record supports this conclusion, including Dr. Van Hook's opinion, the GMHC records and Dr. Rathbone's records, as well as Plaintiff's own testimony and reports to medical providers.

Plaintiff often reported symptoms related to his anxiety, Bipolar Disorder, and ADD/ADHD, including inability to focus, irritability, anxiety, panic attacks, anger, depression, decreased energy, anhedonia, poor sleep, racing thoughts, mood swings, worrying, substance abuse, restlessness, excessive sweating. (Tr. 298, 311, 322, 326-37, 359, 361, 380, 418, 422, 448, 450, 451, 452, 454, 461, 463, 493, 494, 495, 497, 501, 502, and 503).  Further, the medical providers, Dr. Van Hook, Dr. Rathbone, and GMHC, consistently recorded diagnoses of anxiety,

Bipolar Disorder, and ADD/ADHD. (Tr. 302, 328, 359, 420, 425, 455, 460, 464, and 493). These limitations are accounted for in the ALJ's RFC analysis limiting Plaintiff to only occasional contact with the public and co-workers.

Various records also suggest difficulties with memory and focus. Dr. Van Hook notes that his recent memory was intact, as was his sequential memory, but he had trouble with focus and his intermediate memory was only 66% for recall, though it was unremarkable for encoding and 100% with association cues. (Tr. 327). These limitations are accounted for in the ALJ's RFC analysis limiting Plaintiff to simple, routine tasks.

At the same time, GMHC records show that Plaintiff frequently reported not being symptomatic. (Tr. 308, 310, 312, 313, 314, 315, 316, 319, 320, 321, 323, 362, 365, 440, 442, 445, 446, 447, 449, and 458). On several occasions, Plaintiff reported improvements in his symptoms. For example, Plaintiff reported his mood was good and he was less irritable over all on February 10, 2012 (Tr. 356); less anxious and irritable on January 5, 2012 (Tr. 357); "somewhat improved" on January 25, 2011 (Tr. 364); and a decrease in mood swings, increase in concentration, and no need for hospitalization on May19, 2010 (Tr. 440), March 9, 2010 (Tr. 442), and November 19, 2009 (Tr. 445). On numerous occasions, Plaintiff filled out a form indicating he was "doing well currently and just need[ed] to pick up [his] medication today." (Tr. 391, 392, 393, 394, 395).

There is no objective medical evidence to support the severity of limitations suggested by Plaintiff. To the contrary, substantial evidence supports the ALJ's finding that, while the existence of Plaintiff's symptoms is noted throughout, including his difficulties interacting with the public and coworkers, his allegations of disabling severity is not. Dr. Van Hook notes that Plaintiff was able to drive, and to bathe and dress himself (Tr. 326); and had no difficulty in

regulating his affect during the exam despite rating his anxiety at a 10 (Tr. 327).  Dr. Van Hook specifically reported Plaintiff's persistence being adequate and that he was able to interact on a 1:1 basis along with possessing an adequate level of social judgment and adaptive skills. (Tr. 327).  At the hearing Plaintiff indicated that, notwithstanding a couple of episodes of "falling out," he helped his mother maintain the apartments she manages, which included moving couches and painting. (Tr. 46).  He also testified that he can walk, stand for a little while, sit, and pick up 50 pounds. (Tr. 48-49).

In sum, there is substantial evidence in the record supporting the ALJ's RFC assessment for medium work limited to simple, routine tasks and only occasional contact with the public and co-workers.  Additionally, there is substantial evidence in the record supporting the ALJ's conclusion with regard to Plaintiff's RFC that, while Plaintiff's impairments could be expected to cause the symptoms, the intensity, persistence and limiting effects of Plaintiff's symptoms do not support a finding of disability. The ALJ's finding will not be reversed or remanded on this ground.

### D.    ALJ's Hypothetical to Vocational Expert

Plaintiff states, as his final argument, that the ALJ "posed an insufficient hypothetical to the vocational expert." (R. Doc. 12 at 4).  However, in substance the Plaintiff is arguing that the ALJ's RFC should have aligned with the modifications to the hypothetical given by the Plaintiff's representative.

The hypothetical posed by the ALJ at the March 26, 2014 hearing was as follows:

Q:    If I were to assume the claimant is 27 years of age, has seven years of education, has exertional ability to perform heavy work with the following limitations, he's limited to simple routine, repetitive tasks, occasional contact with the general public and coworkers, can he return to his past work?

(Tr. 60). The VE responded that a person with those limitations could return to Plaintiff's past work as a painter helper or commercial cleaner, and further that medium-rated jobs of packager hand, hospital cleaner, and kitchen helper were similar to painter helper and commercial cleaner. (Tr. 60).

In revising the ALJ's hypothetical, Plaintiff's representative questioned whether adding a limitation of an inability to "timely report to work" and/or an inability to "maintain a regular attendance at any of the occupations which you have previously identified" would affect the jobs previously listed by the VE, to which the VE responded there would be no jobs. (Tr. 60-61). Plaintiff's representative then added "whether or not the claimant was able to interact with coworkers or to take instructions from a supervisor" would inhibit those jobs, and the VE responded those limitations would "eliminate those positions." (Tr. 61).

The ALJ did not find that Plaintiff was limited by an inability to timely report to work or maintain regular attendance, nor did the ALJ find that Plaintiff was limited to an *inability* to interact with coworkers or take instructions from a supervisor.[4] "An ALJ's hypothetical question to a vocational expert must reasonably incorporate all the limitations recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the question." *David Portillo Cruz v. Colvin*, 2016 WL 8672925, at *2 (S.D. Tex. Dec. 28, 2016) (citing *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). As the Court found that the ALJ's RFC limiting Plaintiff to simple, routine tasks and only occasional contact with the general public and coworkers was supported by substantial evidence, and the RFC was explicitly submitted in the hypothetical posed to the VE, the ALJ's hypothetical was not in error.

---

[4] The ALJ did find that Plaintiff's ability to interact with coworkers and supervisors was *limited*, but not that he was *unable* to do so, and as set forth in the prior analysis, the ALJ adequately accounted for this limitation in that his RFC limits the Plaintiff to only occasional contact with the general public and coworkers. In addition, this limitation is expressly accounted for in the ALJ's hypothetical posed to the VE. (Tr. 60).

## V.    CONCLUSION

For the reasons given above, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on July 20, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**